IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-50801

Summary Calendar
_____


ESSEX INSURANCE COMPANY,

Plaintiff-Counter Defendant-
Appellee,

v.

LAMPASAS GOLF ASSOCIATION,
INC, ET AL,

Defendants-Counter Plaintiffs


MORRIS L ELLIS,

Defendant-Counter Plaintiff-
Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
(A-97-CV-61)
_____
August 10, 1998
Before KING, PARKER, and DENNIS, Circuit Judges.

PER CURIAM:[*]


Plaintiff-appellee Essex Insurance Company, Inc. sought

declaratory judgment regarding its duties to defend and indemnify

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

defendant-appellant Morris L. Ellis and another party. The district court granted summary judgment in favor of Essex Insurance Company, Inc. Ellis appeals from this judgment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 1994, Lampasas Golf Association, Inc. (LGA) and the City of Lampasas were involved in the expansion of a municipal golf course. In furtherance of this project, LGA representatives allegedly cut down and removed trees and brush from Warren and Mona Wooten's property, without their permission. Consequently, the Wootens filed suit against LGA, Morris L. Ellis, and others (collectively, Defendants). In the Wootens' Third Amended Original Petition, they alleged mental anguish, emotional distress, loss of use of property, and property damage resulting from intentional tortious conduct, including, inter alia, trespass and conversion.[1] Alternatively, the Wootens alleged that Defendants' negligent conduct proximately caused their injuries.

LGA and Ellis notified their insurance provider, Essex Insurance Company, Inc. (Essex) of the suit and made a demand for defense and indemnification. Essex refused, claiming that the

---

[1] Additionally, the Wootens alleged intentional invasion of privacy, harassment, assault, and an unlawful taking of property under the Texas and U.S. constitutions. Because Ellis does not raise any issue on appeal as to these allegations, we limit our review to the allegations mentioned above.

conduct alleged in the Wootens' complaint was outside the scope of coverage provided by LGA's insurance policy with Essex (the Policy). The Policy is a Commercial General Liability (CGL) policy covering both LGA and Ellis in his capacity as an executive officer of LGA.

In January 1997, Essex filed a declaratory judgment action against LGA and Ellis in federal district court based on diversity of citizenship under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Specifically, Essex sought a declaration that it owed no duty to defend or indemnify either LGA or Ellis from the Wooten claims in the underlying state court action. LGA and Ellis counterclaimed for declaratory relief and attorney's fees. Thereafter, the parties filed cross-motions for summary judgment.

On August 8, 1997, the district court, applying Texas law, granted Essex's motion (and denied Ellis's motion) for summary judgment, holding that Essex owed no duty to defend or indemnify either LGA or Ellis in the Wooten suit. Ellis subsequently filed a motion to vacate, alter, or amend the judgment. The district court partially granted the motion, amending its judgment to apply only to the allegations of the Wootens' Third Amended Original Petition. Ellis now appeals the amended judgment.

## II. STANDARD OF REVIEW

We review the granting of summary judgment de novo, applying

3

the same criteria used by the district court in the first instance. See Texas Med. Ass'n v. Aetna Life Ins. Co., 80 F.3d 153, 156 (5th Cir. 1996). First, we consult the applicable law to ascertain the material factual issues. See King v. Chide, 974 F.2d 653, 655-56 (5th Cir. 1992). We then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. See Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We may affirm a district court's grant of summary judgment on any ground that was raised before the district court and upon which both parties had an opportunity to present evidence. Conkling v. Turner, 18 F.3d 1285, 1296 n.9 (5th Cir. 1994).

## III. DISCUSSION

Ellis argues that the district court erred in granting summary judgment declaring that Essex had no duty to defend or to indemnify Ellis in the underlying lawsuit. In support of this argument, Ellis contends that the Wootens' alternate negligence claim in the underlying suit qualifies as an "occurrence" under

4

the Policy and triggers Essex's duty to defend.[2]  Finally, Ellis contends that unresolved fact issues preclude summary judgment on Essex's duty to indemnify.

## A.  Duty to Defend

Under Texas law, an insurer's duty to defend is triggered when allegations in the plaintiff's pleadings raise a potential for coverage under the policy.  See Cornhill Ins. PLC v. Valsamis, Inc., 106 F.3d 80, 84 (5th Cir. 1997); see also Argonaut Southwest Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973).  Put another way, the determination of an insurer's duty to defend depends exclusively upon the "eight corners" of the pleading and the policy.  See National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997).  We must therefore focus our review solely on the facts pled and the policy language, and we exclude alleged legal theories that lend an interpretative slant to the facts.  See Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997) (indicating that the court must focus on factual allegations rather than legal theories); National Union Fire, 939 S.W.2d at 141 (same).

---

[2]     In addition, Ellis contends that the conduct he characterizes as an "occurrence" does not fall under the rubric of Policy exclusions preventing coverage.  However, because Ellis cannot meet the threshold requirement of an "occurrence" triggering policy coverage, we do not reach any conclusion as to the potential applicability of Policy exclusions.

5

Ellis argues that the district court did not properly apply the eight corners rule because it impermissibly resolved issues of fact in favor of Essex. Specifically, Ellis contends that, because it is disputed whether Defendants in the Wooten suit knew that they were on the Wootens' property and cutting down the wrong trees and because an alternate pleading exists alleging negligence, the Wootens' injuries are properly characterized as the result of the negligent determination of property boundary lines and therefore constitute an "accident" or "occurrence" under the Policy's terms. We disagree.

Ellis's argument fails for two reasons. First, as explained above, the district court is obligated to exclude legal theories from its analysis of the allegations in the underlying suit. Thus, a legal theory of negligence cannot be asserted by the insured as a factual element triggering the insurer's duty to defend. See Farmers, 955 S.W.2d at 82-83. Regardless of whether negligence caused one or more Defendants to enter the property, the allegation is that Defendants trespassed, cut down trees that did not belong to them, and later removed them. Thus, as the district court correctly indicated, the mere fact that the Wootens pled that these actions resulted from negligence has no bearing on our eight corners review.

Second, in applying Texas law, this court has repeatedly held that, "where liability premised on negligence is related to and interdependent of other tortious activities, the 'ultimate

6

issue' [in a duty to defend case] is whether the tortious activities themselves are encompassed by the 'occurrence' definition." Cornhill Ins. PLC, 106 F.3d. at 87 ; see also New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 339 (5th Cir. 1996); cf. Farmers, 955 S.W.2d at 82-83 (focusing on the alleged intentional act of shooting that was the origin of damages in determining whether the insurer on an automobile liability policy had a duty to defend the insured driver on a theory of negligent use of an automobile).

An application of this established rule of law precludes distinguishing the alleged negligent conduct from the trespass and conversion as a separate "occurrence" in this case. The negligent identification of boundary lines is merely suggested as a proximate cause of the alleged injury; the Wooten's negligence claim would not exist absent the subsequent intentional torts of trespass and conversion. The allegation that Defendants negligently identified boundary lines therefore cannot create a duty on the part of Essex to defend. See Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co., 99 F.3d 695, 704-5 (5th Cir. 1996) ("Where the legal claims asserted by the plaintiffs are not independent and mutually exclusive, but rather related to and dependent upon excluded conduct, the claims are not covered, even if asserted against an insured who did not himself engage in the prohibited conduct."). Ellis's negligence, if any, is "related to and interdependent of" the tortious conduct alleged

7

and cannot be considered apart from the trespass and conversion claims. See Columbia Mut. Ins. Co. v. Fiesta Mart, Inc., 987 F.2d 1124, 1128 (5th Cir. 1993) (finding that the "occurrence" inquiry focused on fraud alleged, not precipitating negligence). Our only inquiry is therefore whether the intentional acts are covered in the Policy definition of "occurrence."

Under Texas law, the insured bears the burden of showing that the claim against it is potentially within policy coverage. See New York Life Ins. Co., 92 F.2d at 338. The Policy provides coverage for "bodily injury" or "property damage" and creates a duty on the part of Essex to defend the insured in lawsuits alleging an "occurrence" under the Policy. The district court found, and Ellis does not dispute, that the emotional injuries complained of do not fall within the definition of "bodily injury" as set forth in the Policy. Neither party disputes that the Wootens incurred "property damage." Therefore, the only remaining issue is a threshold determination of whether an event classified as an "occurrence" took place, thereby triggering Essex's duty to defend.

The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "accident" is not defined. In construing an insurance policy, the Texas Supreme Court recently reaffirmed that intentional conduct does not constitute an "accident," even if the actor does not intend or expect the

8

consequences that follow from the intentional conduct. <u>Trinity</u>

<u>Universal Ins. Co. v. Cowan</u>, 945 S.W.2d 819, 827-28 (Tex. 1997).

In reaching its holding in <u>Trinity</u>, the court cited with approval

<u>Argonaut Southwest Insurance Co. v. Maupin</u>, 500 S.W.2d 633 (Tex.

1973), a case factually similar to the case at bar. In <u>Argonaut</u>,

the defendant removed dirt from property under an agreement with

an individual the defendant mistakenly believed to be its owner.

<u>Id.</u>, at 633-34. When the true owner sued, the defendant argued

that its conduct was an "accident" and therefore within its

policy coverage. <u>Id.</u> The court rejected this argument, stating:

> The plaintiff's act in trespassing upon the Meyers'
> property did not constitute an accident. They did what
> they intended to do by removing the [dirt] from the
> property. The fact that they were unaware of the true
> owner of the property has no bearing upon whether the
> trespass was caused by accident. The respondent's acts
> were voluntary and intentional, even though the result
> or injury may have been unexpected, unforeseen and
> unintended.

<u>Id.</u> at 635.

An identical analysis is applied in this case. The fact

that Ellis may have been unaware that he was sending LGA agents

to the Wootens' property is irrelevant in determining whether

they intended to clear the plot of land once they got there. It

is clear that the conduct causing the Wootens' property damage

did not constitute an accident and therefore did not constitute

an occurrence. Essex thus has no duty to defend LGA or Ellis.

**B. Duty to Indemnify**

9

An insurer's duties to defend and indemnify are distinct and separate.  See Trinity, 945 S.W.2d at 821-22.  The duty to defend is broader than the duty to indemnify.  See Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 393 (5th Cir. 1995).  Unlike the duty to defend, the duty to indemnify is not based on allegations but on the actual facts proven that underlie the cause of action and result in the insured's liability.  See Canutillo, 99 F.3d at 701.  As the Texas Supreme Court held in Farmers:

> [T]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify. . . .  No facts can be developed in the underlying tort suit that can transform [cutting down and removing trees] into an ["accident"].

Farmers, 955 S.W.2d at 84.

Ellis contends that a declaratory judgment as to future indemnity is improper because the Wootens can potentially amend their complaint to allege other conduct that may fall within Policy coverage and trigger the duty to defend or indemnify.  However, the district court limited its judgment that Essex had no duty to indemnify LGA or Ellis to the allegations contained within the Wootens' Third Amended Original Petition.  Therefore, the district court's judgment does not preclude the existence of a duty on the part of Essex to indemnify should the Wootens further amend their complaint.

10

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.